UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAROLINA PRESERVATION PARTNERS,
INC., and DOUGLAS SMITH,

    Appellants,

vs.                                             Case No. 8:08-cv-532-T-27TGW

WOLF ARBIN WEINHOLD, Debtor, and
SUSAN K. WOODARD, Trustee,

    Appellees.
_____/

## ORDER

**BEFORE THE COURT** is an appeal from the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, Case No. 8:94-bk-6261. Appellants seek reversal of the bankruptcy court's Order on Trustee's Emergency Motion to Approve Compromise with Debtor Wolf Arbin Weinhold and Order Denying Carolina Preservation Partners, Inc. and Douglas Smith's Motion for Rehearing. (Dkt. 1-2). The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. Upon consideration, the orders of the bankruptcy court are vacated. This cause is remanded to the bankruptcy court for proceedings consistent herewith.

*Background*

On June 24, 1994, the debtor, Wolf Arbin Weinhold ("Weinhold"), filed a petition under Chapter 7 of the Bankruptcy Code. (Dkt. 1-7). Weinhold's only significant asset was an 80% limited partnership interest in Wolf's Lair Ltd., a Florida limited partnership ("Wolf's Lair"). (Dkt. 1-8 at 4). Wolf's Lair owned approximately 1,400 acres of real property in North Carolina ("North

1

Carolina property"). (Dkt. 5-8 at 2). Weinhold received a Chapter 7 discharge in January 1995. (Dkt. 5-8 at 3). In 1996, the Trustee sold the 80% limited partnership interest "as-is" to Appellant Carolina Preservation Partners, Inc. ("CPP") for $205,000. (Dkt. 3-15 at 11). CPP is wholly owned and controlled by Appellant Douglas Smith ("Smith"). (Dkt. 3-15 at 3). In June 1998, the Chapter 7 case was closed. (Dkt. 5-8 at 4).

In 2000, Weinhold's creditors moved to reopen the Chapter 7 case based on Weinhold's brother's conveyance of the 20% general partnership interest in Wolf's Lair to Weinhold shortly after Weinhold received the discharge. (Dkt. 2-4 at 3). The bankruptcy court vacated the Final Decree, reopened the case, and reappointed the Trustee. (Dkt. 2-5). Thereafter, the Trustee filed an adversary proceeding against Weinhold, CPP and Smith, alleging that the 20% general partnership interest belonged to the estate and seeking to rescind the sale of the 80% limited partnership interest to CPP based in part on alleged bid rigging. (Dkt. 5-2). The Trustee and Weinhold filed cross-motions for summary judgment with respect to the 20% general partnership interest, which the bankruptcy court denied due to unresolved factual questions. (Dkt. 5-8 at 9-11). The Court concluded that because of these issues, it could not determine whether the North Carolina property was part of the bankruptcy estate. (*Id.* at 11).

In November 2003, the bankruptcy court conducted a three-day evidentiary hearing. (Dkt. 103 at 4). In the next three years, the parties participated in several unsuccessful mediation conferences with the Honorable Herbert Stettin ("Judge Stettin") serving as mediator. (Dkt. 1-3 at 4). On February 2, 2007, three days before the February 5, 2007 trial was to commence, the Trustee filed an Emergency Motion to Approve Compromise. (Dkt. 2-10). Appellants Smith and CPP were not parties to the compromise.

2

The settlement provided that the Trustee and Weinhold, both of whom asserted ownership of the 20% general partnership interest, and the mediator, Judge Stettin, would form a new Florida limited liability company to act as the general partner of Wolf's Lair. (Dkt. 2-11, ¶ 1). Upon reinstatement, Wolf's Lair would then deliver to the Trustee a $2,500,000.00 promissory note secured by a mortgage on the North Carolina property. (*Id.*, ¶ 5). Weinhold would transfer to Wolf's Liar all of his interest, "if any," in the timber rights associated with the North Carolina Property.[1] (*Id.*, ¶ 6). In return, Wolf's Lair would deliver to Weinhold a promissory note equal to 90% of the difference in the value of the property with and without timber rights. (*Id.*, ¶ 7). Wolf's Lair would then file a petition under Chapter 11 of the Bankruptcy Code. (*Id.*, ¶ 8). Upon confirmation of a plan of reorganization, the Trustee and Judge Stettin would transfer their general partnership interests to Weinhold. (*Id.*) The two new mortgages would be subordinated to a carve-out for professional fees and expenses, up to $500,000.00. (*Id.*, ¶ 9).

CPP objected to the compromise on several grounds, including that the compromise used partnership assets for the sole benefit of Weinhold and his creditors and that it would unfairly diminish the value of CPP's limited partnership interest. (Dkt. 3-2). On February 28, 2007, the bankruptcy court conducted a hearing, during which CPP and Smith proffered that the value of CPP's interest would be reduced from $5.6 million to $640,000.00. (Dkt. 3-11 at 33-35). On July 25, 2007, the bankruptcy court approved the compromise. (Dkt. 1-3). CPP and Smith moved for a rehearing. (Dkt. 3-12). On October 5, 2007, the bankruptcy court denied Appellants' motion for rehearing. (Dkt. 1-4). This appeal followed.

---

[1] CPP and Smith maintained that Wolf's Lair already owned the timber rights. (Dkt. 3-15 at 7, 23-24).

## Standard of Review

Factual findings of the bankruptcy court must be affirmed unless clearly erroneous. Fed. R. Bank. P. 8013; *In re Downtown Props., Ltd.*, 794 F.2d 647, 651 (11th Cir. 1986). While conclusions of law are reviewed *de novo*, discretionary rulings, including approval of compromises, are reviewed for abuse of discretion. *See In re Monetary Group*, 2 F.3d 1098, 1103 (11th Cir. 1993); *In re Am. Equity Corp. of Pinellas*, 213 F. App'x 814, 814 (11th Cir. 2007).

## Discussion

In this appeal, CPP and Smith (collectively, "CPP") make three related arguments: (1) the bankruptcy court lacked subject matter jurisdiction over the North Carolina property; (2) the Wolf's Lair partnership agreement and Florida law do not permit the use of partnership property by a general partner to satisfy his individual debts; and (3) the bankruptcy court erred by failing to conduct an evidentiary hearing and making specific findings of fact, including whether the compromise was consistent with the limited partnership's business purpose. This Court finds that the bankruptcy court had subject matter jurisdiction over the adversary proceeding. The approval of the compromise, however, was an abuse of discretion, as the purported general partners did not have authority to enter into the settlement agreement. The Court therefore does not reach the assigned procedural errors.

### A. Jurisdiction

CPP first argues that because the property of a limited partnership does not belong to the individual partners, but rather the partnership itself, the limited partnership was required to be a party to the adversary proceeding in order for the bankruptcy court to exert jurisdiction over its assets. Although not raised below, lack of subject matter jurisdiction may be raised for the first time on

appeal. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999).

Pursuant to 28 U.S.C. § 1334(a), the district court has original and exclusive jurisdiction over all cases under the Bankruptcy Code, Title 11. 28 U.S.C. § 1334(a). The district court also has original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district court may thus refer such cases and civil proceedings to the bankruptcy court. 28 U.S.C. § 157(a). The bankruptcy court has jurisdiction to hear and determine civil proceedings under Title 11, core proceedings arising under Title 11, and core proceedings arising in a case under Title 11. 28 U.S.C. § 157(b)(1). Although the Trustee argues that this was a core proceeding (Dkt. 11 at 13), no authority is presented in support of this argument. *Cf.* 28 U.S.C. § 157(b)(2) (listing certain core proceedings).

Even if this were not a core proceeding, the Court finds a sufficient basis for jurisdiction. In order for the bankruptcy court to exercise subject matter jurisdiction over a dispute, "some nexus between the civil proceeding and the title 11 case must exist." *Matter of Munford, Inc.*, 97 F.3d 449, 453 (11th Cir. 1996); *Ghee v. Retailers Nat'l Bank*, 271 F. App'x 858, 860 (11th Cir. 2008). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir.1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. 541(a)(1).

The issue is therefore not whether the bankruptcy court had jurisdiction over the North Carolina property, in the nature of an in rem proceeding, as CPP apparently argues. (Dkt. 8 at 18). Rather, the issue is whether the adversary proceeding was related to the bankruptcy estate, which it

5

unquestionably was. At the commencement of the case, Weinhold's estate included the 80% limited partner interest in Wolfs' Lair. The adversary proceeding sought to unwind the sale of the 80% interest to CPP. The outcome of this action would therefore affect the estate. The bankruptcy court accordingly had subject matter jurisdiction over the adversary proceeding.

The Trustee recognizes that the true gist of CPP's argument is that Wolf's Lair was a "necessary party" to the adversary proceeding pursuant to Bankruptcy Rule 7019, which incorporates Federal Rule of Civil Procedure 19.[2] Although this issue was not raised before the bankruptcy court and has not been briefed by CPP on appeal, an appropriate motion to this effect may be made after remand.

### B.  *Approval of Compromise*

With respect to the bankruptcy court's order approving the compromise, CPP argues that the district court applied the wrong standard for approval, erred in determining that the general partner had authority to enter into the compromise, and failed to conduct an evidentiary hearing and make necessary findings of fact. Although this Court finds no abuse of discretion in the standard applied, the Court does find that the bankruptcy court abused its discretion in approving the compromise. The arguments concerning the remaining procedural issues are therefore not reached.

1.  *Standard for approval*

In reviewing a settlement agreement, the bankruptcy court must consider: (1) the probability

---

[2] Rule 19 provides:
A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(I) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

of success in the litigation; (2) the difficulties that may be encountered in collection; (3) the complexity of the litigation, expense, inconvenience and delay in attending; and (4) the paramount interest of the creditors and deference to their reasonable views. *In re Justice Oaks,* 898 F.2d 1544, 1549 (11th Cir.1990).

CPP argues that the bankruptcy court failed to apply the correct legal standard in approving the compromise. Appellants rely on *In re RFE Industries, Inc.*, in which the Third Circuit noted that the fourth factor of the equivalent *Justice Oaks* test should be modified under the unique facts of that case. 283 F.3d 159 (3d Cir. 2002). Specifically, instead of evaluating whether the settlement furthered the paramount interest of the creditors -- where there were no creditors -- the court found that the proper question was whether the settlement furthered the interests of the debtor's shareholders. *Id.* at 165.

This Court agrees that under the facts presented in this case, the bankruptcy court was required to consider the interests of CPP, as it was a limited partner without management authority, similar to a shareholder. "A bankruptcy court abuses its discretion if it ignores a material factor deserving of significant weight, relies upon an improper factor or makes a serious mistake in weighing proper factors." *Howard v. Lexington Invs., Inc.*, 284 F.3d 320, 323 (1st Cir. 2002) (internal quotations omitted). In this case, the bankruptcy court ultimately considered the fairness of the compromise as to CPP, based on the evidence regarding the devaluation of its 80% partnership interest. (Dkt. 4-4 at 18-20). No abuse of discretion occurred in this respect.

2. *Authority to compromise*

CPP also argues that the two claimants to the general partnership interest, the Trustee and Weinhold, did not have authority, as a matter of law, to encumber the property as contemplated by

7

the compromise. This Court agrees. Pursuant to the partnership agreement and Florida law, neither the Trustee nor Weinhold had authority to encumber the property as contemplated by the compromise.

Pursuant to the Wolf's Lair partnership agreement, Florida law governs. (Dkt. 3-8 at 14, ¶ 24). As the settlement was entered into on February 1, 2007, Florida's 2005 Revised Uniform Limited Partnership Act ("RULPA") provides the applicable legal principles. Fla. Stat. § 620.2204(2). With respect to the extent of a partner's authority, RULPA generally provides that the partnership agreement "governs relations among the partners and between the partners and the partnership." Fla. Stat. § 620.1110(1).

The Wolf's Lair partnership agreement provides that the general partner has "exclusive" authority to operate the partnership's business and the limited partner shall not participate in the management of the business. (Dkt. 3-8 at 6, ¶ 12.A.1). However, the partnership agreement authorizes the general partner to encumber the partnership property only for limited purposes:

> [T]he General Partner is hereby authorized by the Limited Partners to negotiate, enter into and execute purchase agreements, notes, mortgages, deeds of trust, leases and all other such contracts and to incur obligations for and on behalf of the Partnership *in connection with its business*; to borrow monies for and on behalf of the Partnership which may be necessary *for the purposes of the Partnership* upon such terms and conditions as they may deem advisable and proper, and to execute promissory notes and mortgages for security therefor, and to otherwise pledge the credit of the Partnership *for such purposes*.
> (Dkt. 3-8 at 6, ¶ 12.A.2) (emphasis added).

The stated purpose of the Wolf's Lair partnership is "to acquire, develop, improve and/or hold for investment purposes real and personal property." (Dkt. 3-8 at 3, ¶ 3). Accordingly, the partnership agreement requires any encumbrance of partnership assets to be in connection with or for the purpose of acquiring, developing, improving, or holding for investment the North Carolina property.

8

In this case, the compromise was not for these purposes, but for the purpose of settling a civil proceeding against one claimant to the general partner interest.[3] This contravenes Florida law, which provides that a partner may not divert partnership assets for non-partnership purposes. *See Hallock v. Holiday Isle Resort & Marina, Inc.*, 885 So. 2d 459, 462-63 (Fla. 3d DCA 2004) (citing Revised Uniform Partnership Act, Fla. Stat. § 620.8404). Furthermore, "[a] creditor of a general partner cannot satisfy a judgment against the general partner out of funds of the partnership." *Pressner v. Pressner*, 579 So. 2d 379, 379 (Fla. 2d DCA 1991) (citing *In re Dutch Inn of Orlando, Ltd.*, 2 B.R. 268 (M.D. Fla.1980)); *Loyola Federal Sav. Bank v. Fickling*, 58 F.3d 603, 608 (11th Cir. 1995).[4] Simply put, the general partner may not divert, or in this case, encumber, partnership property for his sole benefit, at the expense of the limited partnership and the limited partners.

Implicitly acknowledging the overwhelming benefit to Weinhold and his creditors, the Trustee argues that the Wolf's Lair partnership agreement authorizes the general partner to engage in self-dealing. By extension, the Trustee argues that this permits the general partner to encumber partnership property for the benefit of his creditors. This Court again disagrees.

The partnership agreement provides:

The General Partner for and on behalf of the Partnership, may employ or otherwise deal with himself or any person, firm or corporation in which he or any of the Corporate Partner's stockholders, officers or directors has a direct or indirect interest. In this regard the management of the assets of the Partnership may be vested in the General Partner under such arrangements or contracts as would generally be acceptable if negotiated in an arm's length transaction (which shall not be presumed to be unfair), or which would generally be considered to be in the best interest of the Partnership, taking into consideration not only the economic benefits or interests but

---

[3] Although the Trustee maintains that the compromise settled litigation that stymied the development of the North Carolina property, the Trustee has not cited any findings of fact to this effect. (Dkts. 4-4, 1-3).

[4] Unless displaced by provisions of RULPA, "the principles of law and equity supplement [the RULPA]." Fla. Stat. § 620.1107.

all other factors, including but not limited to political, public relations and promotional considerations involved in such arrangements or contracts, and such General Partner shall be entitled to such fees, commission and compensation as shall be reasonable with respect thereto. (Dkt. 3-8 at 7, ¶ 12.A.2).

Consistent therewith, RULPA provides: "[a] general partner does not violate a duty or obligation under this act or under the partnership agreement merely because the general partner's conduct furthers the general partner's own interest." Fla. Stat. § 620.1408(5).[5]

The Wolf's Lair partnership agreement authorizes the general partner, *for and on behalf of the partnership*, to employ or deal with himself or other entities in which he has an interest. Thus, the *partnership* may contract with the *general partner* (or his entities).[6] The partnership agreement does not, however, authorize two claimants to the general partner interest to contract with each other, where -- crucially -- the partnership is *not* a party to the agreement. In addition, the compromise does not "merely" further the general partner's interest as permitted by RULPA. It primarily furthers the interest of several third parties, including Weinhold's creditors and Judge Stettin, at the expense of the partnership.

Moreover, under the partnership agreement, the authority of the general partner to enter into any self-dealing arrangement or contract on behalf of the partnership is qualified. The arrangement or contract must either be equivalent to "an arm's length transaction" or "in the best interest of the Partnership." (Dkt. 3-8 at 7, ¶ 12.A.2). The compromise was neither equivalent to an arm's length

---

[5] As self-dealing is permitted by RULPA, the partnership agreement does not vary the statutory duty of loyalty owed by the general partner to the partnership. The question of whether the partnership agreement or compromise is "manifestly unreasonable" under § 620.1110(2)(e) is therefore not at issue. *See* Fla. Stat. § 620.1110(e) (stating that a partnership agreement may not eliminate the duty of loyalty owed by a general partner, except that it may "identify specific types or categories of activities that do not violate the duty of loyalty, if not manifestly unreasonable.") Rather, the pertinent question is whether the general partner had authority to enter into the compromise under the plain language of the partnership agreement.

[6] *See, e.g., In re Twelve Oaks, Ltd.* 59 B.R. 736, 743 (Bankr. M.D. Fla. 1986)(encumbering of partnership property to secure general partner's company's line of credit authorized where it furthered interest of partnership).

10

transaction nor in the best interest of the partnership, as it secured a benefit for one claimant to the general partner interest and his creditors and devalued the partnership property.

Finally, the compromise violates the general partner's fiduciary duties to the limited partners. Under RULPA, a general partner owes a duty of loyalty and a duty of care to the limited partnership, and is obligated to discharge those duties in good faith and fair dealing. Fla. Stat. § 620.1408(1),(4). The duty of care "is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." Fla. Stat. § 620.1408(3). The duty of loyalty is limited to the following:

> (a) To account to the limited partnership and hold as trustee for it any property, profit, or benefit derived by the general partner in the conduct and winding up of the limited partnership's activities or derived from a use by the general partner of limited partnership property, including the appropriation of a limited partnership opportunity.
>
> (b) To refrain from dealing with the limited partnership in the conduct or winding up of the limited partnership's activities as or on behalf of a party having an interest adverse to the limited partnership.
>
> (c) To refrain from competing with the limited partnership in the conduct of the limited partnership's activities.
> Fla. Stat. § 620.1408(2).

The Trustee argues that these "limited" duties permit the general partner to mortgage the partnership property to pay his individual debts. The Trustee reads these provisions far too broadly. Pursuant to § 620.1408(2)(a), the general partner holds in trust any benefit or profit derived from the use of partnership property for the limited partnership. Any mortgage must therefore be held by the general partner in trust for the benefit of the limited partnership, not for the benefit of the general partner's individual creditors, as the compromise contemplates.

Further, RULPA expressly provides that the general partner must refrain from dealing with

11

the partnership when having an interest adverse to the partnership. Fla. Stat. § 620.1408(2)(b). The terms of the compromise effectively benefit the creditors of the general partner, as opposed to the interest of Wolf's Lair. Accordingly, the general partner's interest in settling a claim against him personally is adverse to the limited partnership's interest in maintaining the North Carolina property free from encumbrances, at least those encumbrances not "in connection with its business" or "for the purposes of the Partnership." (Dkt. 3-8 at 6, ¶ 12.A.2). Based on the foregoing, the compromise violates the general partner's fiduciary duties to the limited partners.

### *Conclusion*

In summary, neither the Trustee nor Weinhold had authority to enter into the compromise because they did not have the requisite authority under the partnership agreement and the compromise violated the general partner's fiduciary duty to the limited partners under Florida law. As neither the Trustee nor Weinhold had authority to encumber the partnership property in such a manner the bankruptcy court necessarily abused its discretion in approving the Trustee's proposed settlement. *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) (noting that abuse of discretion occurs when a bankruptcy court misconceives or misapplies the law); *Owner-Operator Ind. Drivers Ass'n, Inc. v. Landstar Sys. Inc.*, 541 F.3d 1278, 1294 (11th Cir. 2008) (noting that a court "by definition abuses its discretion when it makes an error of law"). *see also Leverso v. Lieberman*, 18 F.3d 1527, 1531 (11th Cir. 1994) (in class action, noting that in reviewing settlement for abuse of discretion, court examines whether the settlement is contrary to the bondholders' rights under the governing contract).

Upon consideration, it is **ORDERED AND ADJUDGED**:

1) The bankruptcy court's Order on Trustee's Emergency Motion to Approve

Compromise with Debtor Wolf Arbin Weinhold and Order Denying Carolina Preservation Partners, Inc. and Douglas Smith's Motion for Rehearing (Dkt. 1-2) are **VACATED**. This cause is **REMANDED** for further proceedings consistent with this Order.

2) The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in chambers this 25th day of March, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record
Honorable Paul Glenn, U.S. Bankruptcy Judge